ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF AKRON, | ) | |
| | ) | CASE NO. 5:09CV601 |
| Appellant, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| AKRON THERMAL, LP, | ) | <u>ORDER</u> |
| | ) | |
| Appellee. | ) | |
| | ) | (Resolves Docs. 4 and 5) |

This matter comes before the Court on a motion to dismiss filed by Appellee, Akron Thermal, Limited Partnership ("Akron Thermal"). The Court has been advised, having reviewed the motion, response by Appellant ("the City"), reply, brief in support filed by the Trustee, and applicable law. For the reasons stated herein, the motion is GRANTED IN PART and DENIED IN PART.

**I.    Facts**

The City owns certain real properties and facilities consisting of two steam-generating plants and a distribution system. Akron Thermal leases these properties and facilities pursuant to a lease ("the Lease") executed on August 15, 1997. For a lengthy period of time, Akron Thermal was in default of its required payments under the Lease. As a result, the City sent Akron Thermal a notice of its intent to terminate the Lease. Akron Thermal responded to that notice by filing for bankruptcy and invoking the automatic stay, thereby preventing the Lease from being terminated.

During the bankruptcy proceedings, the parties contested the ability of Akron Thermal to

assume and extend the Lease. After numerous hearings, the bankruptcy court concluded that Akron Thermal could both assume and extend the Lease. Following this ruling, on May 5, 2008, the City sought an interlocutory appeal. The district court, however, never ruled on the City's request for such an appeal.[1]

On January 26, 2009, the bankruptcy court issued its Confirmation Order and confirmed the Second Amended Plan of Reorganization for Akron Thermal ("the Plan"). The City twice sought stays of the implementation of the Plan. The second request was denied by the district court on February 19, 2009.[2] The City then proceeded with its appeal from the Confirmation Order. On March 20, 2009, Akron Thermal moved to dismiss the appeal, arguing that the appeal is equitably moot. The Trustee responded in support of the motion on April 16, 2009, and the City opposed the motion on April 20, 2009.

In its motion, Akron Thermal described the actions that have taken place since the inception of the Plan. The Plan became effective on February 20, 2009. On that day, Thermal Ventures II, L.P. ("TVII") wired $3,000,000 to Akron Thermal to fund the plan. Akron Thermal wrote a check to the City in the amount of $2,541,103.09 and to the State of Ohio in the amount of $150,000. Furthermore, Akron Thermal issued 160 checks to Class 3.1 creditors (those with claims under $5,000). Also on the effective date of the Plan, Akron Thermal changed its ownership structure, extinguishing the interest held by Jeffrey Bees. Akron Thermal further executed a promissory note in amount of $1,350,000 to the State of Ohio and in the amount of $2,060,000 to the Creditor's Trust. The latter note is secured by a first lien on the entirety of Akron Thermal's assets. Finally, Akron Thermal issued a promissory note to TVII in the amount

---

1 The undersigned was not assigned to the case number generated through the City's request for an interlocutory appeal.
2 Likewise, the undersigned was not assigned to the case number generated through the City's request for a stay.

of $250,000.

Since the effective date of the Plan, Akron Thermal has engaged in its day-to-day business. As a result, Akron Thermal has paid out or incurred expenses approaching $1,500,000 to its employees, supplies, and vendors. Akron Thermal also hired a new engineer and purchased new equipment in the amount of $105,000. Akron Thermal also negotiated new rates with one of its customers, Canal Place, Ltd. Finally, on April 22, 2009, Akron Thermal wired $25,000 to the U.S. EPA to resolve its administrative claim.

## II.     Legal Standard

In determining whether a bankruptcy appeal is equitably moot, this Court is required to proceed under the three-factor analysis adopted by the Sixth Circuit. In analyzing the facts, the Court must weigh the following three factors: "(1) whether a stay has been obtained; (2) whether the plan has been 'substantially consummated'; and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *City of Covington v. Covington Landing LP*, 71 F.3d 1221, 1225 (6th Cir. 1995). In performing this analysis, the Court is mindful of the underlying rationales supporting the equitable mootness doctrine.

> The equitable mootness doctrine is applied in appeals from bankruptcy confirmations in order to protect parties relying upon the successful confirmation of a bankruptcy plan from a drastic change after appeal. *City of Covington v. Covington Landing LP*, 71 F.3d 1221, 1225 (6th Cir. 1995) ("[A] plan of reorganization, once implemented, should be disturbed only for compelling reasons."). Unlike mootness in the constitutional sense, equitable mootness does not follow from Article III standing principles but is an equitable doctrine applied to protect parties' settled expectations and the ability of a debtor to emerge from bankruptcy. *United Steelworkers v. Ormet Corp.* (*In re Ormet*), 2005 WL 2000704, at *4 (S.D.Ohio 2005). *See Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002) ("[T]he doctrine of equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable.").

*In re United Producers, Inc.*, 526 F.3d 942, 947 (6th Cir. 2008). With this backdrop in mind, the Court reviews the pending motion to dismiss.

**III.  Analysis**

1. <u>Absence of a stay</u>

It is undisputed that the City sought a stay of this matter in both the bankruptcy court and through the district court prior to the filing of this action. Both requests were denied. The fact that the City made two such requests is immaterial to the Court's analysis. *Id.* at 948 ("the reason for the absence of a stay is immaterial to the equitable mootness analysis."). Furthermore,

> When an appellant does not obtain a stay of the implementation of a confirmation plan, the debtor will normally implement the plan and reliance interests will be created. Thus, the failure to obtain a stay will count against the appellant in determining whether an appeal should be denied on equitable mootness grounds. The failure to seek a stay, however, is not necessarily fatal to the appellant's ability to proceed.

*Id.* (citations and quotations omitted.). Accordingly, while not dispositive, this factor weighs in favor of Akron Thermal.

2. <u>Substantial Consummation</u>

11 U.S.C. § 1101(2) defines substantial consummation as:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

The Sixth Circuit has routinely used this definition when performing an equitable mootness doctrine. The Court, therefore, utilizes this definition in its analysis.

Initially, the City contends that its placement of funds into a separate account eliminates

any possibility that substantial consummation has occurred. First, the Plan itself did not order the funds into escrow. Instead, the City has simply made an attempt to keep those funds separate from other City funds. Second, there is no indication that any of the other payments made under the Plan were placed in escrow or ever held separately. Accordingly, the Court affords little weight to the fact that the City has held its funds separately.

Next, the City contends that the promissory notes issued in accordance with the Plan are insufficient to warrant substantial consummation. The Court agrees with Akron Thermal that subsection A deals with only the property proposed to be transferred at or near the time the Plan is confirmed.

> Although the statutory definition of "substantial consummation" is not entirely clear, the Court concludes that distributions to creditors over a period of time are not the types of transfers of property proposed by the plan to be transferred contemplated in subsection (A). In order to give effect to the provision requiring only commencement of such distributions, it must be concluded that the property transfers contemplated in subsection (A) include other types of transfers such as are often contemplated on or shortly after the effective date of a confirmed plan. Such transfers might include the transfer of a security interest to unsecured creditors, as occurred here, a transfer of stock to creditors or third parties, a transfer of promissory notes to creditors, transfers of property to secured creditors in satisfaction of their claims, or transfers of property by third parties to the debtor.
>
> Thus, subsections (A) and (C) appear to distinguish between transfers of property to or from the debtor at or near the time the plan is confirmed undertaken to shape the new financial structure of the debtor and distributions of dividends to creditors made over a period of time from operating revenues. "Substantial consummation" requires completion or near completion of the former, but only commencement of the latter.

*In re Hayball Trucking, Inc.*, 67 B.R. 681, 684 (Bankr. E.D.Mich. 1986).

In response to this argument, the City relies upon *In re Condec, Inc.*, 225 B.R. 800 (Bankr. M.D.Fla. 1998). Upon review, the Court declines to rely on *Condec*.

First, *Condec* contains no definitive holding on the issue at hand. Instead, that court

concluded: "this Court is not convinced that the issue of obligation notes qualifies as the basis for a finding of substantial consummation." *Id.* at 805. The court then continued on with its analysis by assuming that the obligations constituted substantial consummation. The court's holding, therefore, did not in any manner rely upon a finding that the plan had not been substantially consummated. As such, the "holding" that the City seeks to rely upon is little more than dicta. Finally, this Court finds the *Condec* court's dicta unpersuasive. In its analysis of the issue, the *Condec* court focuses upon the effect of the notes on the third parties and their reliance interests. This factor is properly addressed under the third prong of the equitable mootness as followed in this Circuit. As such, this Court declines to rely upon such a factor in performing its substantial consummation analysis.

Based upon the above analysis and facts, there is little question that the plan has been substantially consummated. In the Facts section above, the Court has laid out in detail the number of payments and transactions that have occurred since the Plan was confirmed. Those facts demonstrate that substantially all of the property proposed by the Plan to be transferred at its inception has been transferred. Subsection A of § 1102, therefore, has been satisfied.

Finally, there is no dispute that the remaining subsections have been satisfied. Assumption of the business and commencement of distribution have not been challenged by the City. Accordingly, the Court finds that substantial consummation of the plan as defined under § 1102 has occurred.

3. Third Party Rights and Success of the Plan

Despite this Court's conclusion that the plan has been substantially consummated, it is "not necessarily ... impossible or inequitable for [this] court to grant effective relief." *In re United Producers,* 526 F.3d at 949 (quoting *In re Manges*, 29 F.3d 1034, 1042-43 (5th Cir. 1994)). In

making this final determination, the Court must determine "whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re American HomePatient*, *Inc.*, 420 F.3d 559, 564 (6th Cir. 2005). "Determinations of mootness ... require a case-by-case judgment regarding[] the feasibility or futility of effective relief should a litigant prevail." *United Producers*, 526 F.3d at 949 (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147-48 (D.C.Cir. 1986).

> As part of our analysis of the feasibility of granting relief, this Court considers the nature of the relief requested and whether it amounts to a piecemeal revision of the plan or a wholesale rewriting of it. *In re Manges*, 29 F.3d. at 1043 ("We must evaluate [actions taken pursuant to the Plan], many of which appear irreversible, against the backdrop of the relief sought-nothing less than a wholesale annihilation of the Plan."). In *Guardian Savings & Loan Association v. Arbors of Houston Associates* (*In re Arbors of Houston Associates*), 172 F.3d 47, 1999 WL 17649 (6th Cir. 1999) (unpublished table decision), we held that equitable mootness did not apply where the creditor contested the interpretation of a provision of a reorganization plan. We found that the adoption of the creditor's interpretation "would not substantially upset the plan of reorganization itself. The refinancing would go through and no other term of the reorganization would be affected." *In re Arbors of Houston Assocs.*, 172 F.3d 47, 1999 WL 17649, at *3. We have also declined to declare an appeal equitably moot when there is uncontested evidence that the creditor's requested relief would not require abandonment of the plan. In *In re American HomePatient* we determined that despite the substantial consummation of the plan, the lenders' appeal was not equitably moot. *In re American HomePatient*, 420 F.3d at 565. In light of the debtor's failure to present evidence specifically rebutting the lenders' arguments, we determined that the lenders presented a plausible argument that the implementation of their suggested changes to the confirmation plan would not require any of the actions undertaken pursuant to the plan to be reversed. Id. at 564-65.

*United Producers*, 526 F.3d at 949-50.

Initially, the Court notes that it agrees with the City's contentions that not each of its appellate issues are "all or nothing" as argued by Akron Thermal. Accordingly, the Court will individually evaluate each of the claimed errors by the City.

**Issue 1**

The City has argued under Issue 1 that the bankruptcy court erred when it determined under § 1129 of the Bankruptcy Code that Akron Thermal's Plan was feasible.  The City has further divided this issue into seven subparts.   The Court evaluates each of those subparts.

Prior to evaluating each subpart, the Court first rejects Akron Thermal's contention that the Court cannot review any challenge under § 1129 of the Bankruptcy Code.   The Sixth Circuit in *In re American HomePatient*, 420 F.3d at565, made it clear that the Court must evaluate each claim for relief independently.

> In sum, although the lenders did not seek a stay before this court, and although the reorganization plan has been substantially consummated, the lenders have presented a plausible argument that American might be able to pay $290,000,000 at a 12.16% interest rate without affecting the success of the confirmed plan.

*Id.*   The Court, therefore, will evaluate whether the City has put forth plausible arguments that its relief could be granted without affecting the success of the Plan.

Under subpart A, the City contends that the bankruptcy court erred when it found that Akron Thermal was not in default under the Lease based upon notice from the EPA of a violation of the Clean Air Act.   Upon review, the Court finds Akron Thermal's motion well taken with respect to this subpart.

In opposition to Akron Thermal's motion, the City asserts "that any effect on the success of the Plan, however, is minimized because the Lease will continue in place during this Appeal." Doc. 12 at 20.   It is difficult for the Court to understand what conceivable argument the City is attempting to put forth with this statement.   If the City is successful in its contentions, the end result will be termination of the Lease at the conclusion of this appeal.   Terminating the Lease would put an end to Akron Thermal's life as a going concern.   Without an operations building, the

business could not go forward. Accordingly, this relief would serve two purposes. It would eviscerate the Plan and it would dramatically affect the interest of third party creditors. While those creditors may have a lower expectation interest to the extent that some have received only promissory notes, there is no doubt that they have a tangible interest. There is simply no question that terminating the Lease would result in those creditors receiving dramatically less than they would under the confirmed Plan. The City, therefore, has failed to put forth a plausible argument that relief could be granted on this issue without affecting the success of the Plan. As such, the Court finds Akron Thermal's motion to dismiss to be well-taken as to subpart A.

In subparts B and C, the City contends that the bankruptcy court erred by failing to find that it was entitled to indemnity under the lease and that it erred when it refused to include certain charges in the cure amount required under § 365(b)(1)(A) of the Bankruptcy Code. With respect to these subparts, the City does little more than request that this Court find that it is owed additional monies by Akron Thermal. The Court is confident that it could fashion relief on these issues in such a manner as to avoid any impact on the success of the Plan. Whether it be through requiring the issuance of a long-term promissory note or some other mechanism, the Court could achieve the relief sought by the City without affecting the Plan. Akron Thermal's motion to dismiss is not well taken with respect to subparts B and C of Issue 1.

Subparts D through H of the City's Issue 1 assert that the bankruptcy court erred when it found that:

> d. the Debtor will have sufficient cash flow to meet its future obligations despite its financial projections being inaccurate and unreliable;
>
> e. the Debtor will be adequately capitalized under the Plan;
>
> f. the Debtor had properly and effectively maintained the premises in accordance with its obligations under the Lease;

> g. the Debtor had provided adequate assurance of future performance under the Lease; and
>
> h. the Debtor was permitted to assume the franchise ordinance that would enable it to operate.

Doc. 12 at 28-29.  To the extent that these subparts challenge aspects of the Lease (F through H), the Court has detailed above why it cannot fashion relief that would not eviscerate the Plan. Accordingly, those subparts are equitably moot.

The remainder of the subparts effectively challenges the Plan as a whole.  A finding that the Debtor has insufficient cash flow or is inadequately capitalized would require this Court to entirely overhaul the Plan.  Unlike the discrete aspect of the plan challenged in *American HomePatient*, the cramdown interest rate, subparts D and E challenge aspects that affect the entirety of the Plan.  Accordingly, the City has failed to put forth any plausible argument that the Court could grant relief on these issues without affecting the success of the Plan.  Instead, the City suggests that the Court overhaul the Plan and start from square one again.  The City asserts that if it is correct under subparts D and E, the new plan will actually be more likely to succeed than the current Plan.  While conceivably this could be true, the Court cannot avoid that starting anew and crafting a new plan would undoubtedly dramatically affect the interests of third parties, while decimating the current Plan upon which those third parties have relied.  The Court, therefore, finds that the remaining subparts of Issue 1 are equitably moot.

**Issue 2**

The City's second issue contends that the bankruptcy court erred when it found that the Plan did not violate the fair and equitable requirement of the Bankruptcy Code.  Specifically, the City contends that the bankruptcy court permitted a violation of the absolute priority rule and erred

in finding that the Plan met the market test. The Court finds these issues to be equitably moot.

Like its latter issues raised above, the City's second issue challenges the entirety of the Plan. Accordingly, any relief provided by this Court would require the entire Plan to be unraveled. The Court is not persuaded by the authorities offered by the City that such relief is proper in the face of the facts herein.

Initially, the Court notes that as stated above, *In re American HomePatient* does not stand for the proposition that any type of relief is permissible. Rather, the City must put forth plausible arguments that its relief will not affect the success of the plan. The City has failed to put forth such an argument with respect to Issue 2.

In addition, the City relies upon *In re Investment Co. of the Southwest, Inc.*, 341 B.R. 298 (B.A.P. 10th Cir. 2006). The Court therein noted as follows:

> The distributions made under the Plan are of the revised promissory notes to Debtor's various creditors. These notes merely adjust pre-confirmation rights between Debtor and its creditors. There has been no distribution of stock. There has been no infusion of capital. There has been no sale of assets, other than in the ordinary course of business. Only limited payments have been made to creditors. Since the only parties involved are those who participated in the bankruptcy proceeding (as opposed to bona fide purchasers or other third parties), the public policy of finality for bankruptcy court orders does not weigh heavily here.

*Id.* at 309-10. Unlike the above facts, Akron Thermal has been infused with new capital, as described in the facts section above. Furthermore, numerous cash payments have been made and the unsecured creditors have received a security interest in the entirety of the debtor's assets. The Court, therefore, finds the above case to be distinguishable and inapplicable.

The only Sixth Circuit case relied upon by the City, *In re American HomePatient*, requires the City to put forth a plausible argument that its relief will not affect the success of the plan. The City again contends that the relief it seeks would make the Plan more likely to succeed. The City,

however, ignores that its relief would not make the confirmed Plan more successful, but rather would require the bankruptcy court to fashion a new plan. The Court does not believe that the Sixth Circuit standard for equitable mootness supports the Court taking such an action once it has been determined that a plan has been substantially consummated and that third party interests would be affected. Accordingly, the Court finds Akron Thermal's motion well taken with respect to Issue 2.

**Issues 3 through 7**

Issues 3 through 7 all revolve around the Lease. The City raises numerous errors regarding assumption of the lease, disclosure of terms of the lease, and the bankruptcy court's failure to issue a final, appealable order on the lease earlier in the litigation. As detailed above, the relief sought by the City is the rescission of the Lease. Any such relief would destroy the viability of Akron Thermal and deny its outstanding creditors the prospective relief they receive under the Plan. The Court, therefore, cannot grant such relief without affecting the rights of innocent third parties.

Furthermore, the City's argument that the bankruptcy court should have issued a final, appealable order earlier in these proceedings is little more than an effort to avoid the equitable mootness doctrine in its entirety. The Court finds no merit in such argument. Issues 3 through 7 are equitably moot.

## IV. Conclusion

Consistent with the above, Akron Thermal's motion to dismiss is GRANTED IN PART and DENIED IN PART. Based upon the Court's ruling, the following issues are the sole issues raised by the City that shall be briefed:

1) Whether the bankruptcy court erred when it determined that Akron Thermal did not have

an obligation to indemnify the City when the EPA notified it of the Clean Air Act violation.

2) Whether the bankruptcy court erred when it found that the City's water and sewer utility charges were not part of the cure required under the Bankruptcy Code.

The stay on preparing the transcripts is hereby lifted.  Furthermore, the motion for an extension to prepare the transcripts (Doc. 4) is DENIED WITHOUT PREJUDICE to re-filing if necessary.  The City shall re-evaluate its needs for specific transcripts based on this Court's current holding.  If an extension is still necessary, the Court will entertain such a re-filed motion.

IT IS SO ORDERED.


June 17, 2009                             /s/ John R. Adams
Dated                                     JUDGE JOHN R. ADAMS
                                          United States District Judge